NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.*, | : : : | Civ. No. 02-4834 (GEB) |
| Plaintiffs, | : : : | **MEMORANDUM OPINION** |
| v. | : : : |  |
| JOYCE P. CHANG, *et al.*, | : : : |  |
| Defendants. | : : : |  |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion of the United States of America on behalf of its agency, the Small Business Association ("SBA" and referred to collectively with the United States as "Plaintiffs"), for summary judgment on their claims seeking partial satisfaction of judgments against defendant David Chang ("Defendant") from fraudulent transfers made to his children, defendants Joyce Chang; Michael Chang; and Elaine Chang, a.k.a. Elaine Darer; and his friend, defendant Cheryl Cherne (collectively referred to as the "Transferee Defendants"), from defendants Saska Corporation ("Saska") and Dakota Management, Inc. ("Dakota"). The Court, having jurisdiction over the matter pursuant to 28 U.S.C. § 1345, decided the motion based upon the parties' submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Plaintiffs' motion for summary judgment is granted.

**I. BACKGROUND**

The SBA holds two judgments against Defendant. The first judgment, dated December 18, 1998, is in the amount of $2.1 million. The second judgment, dated June 18, 1999, is in the aggregate amount of approximately $995,000.

In early 1999, Defendant, through his alter ego company, River Road Realty Development Corp. ("River Road"), entered into a contract to sell the Maxwell House Plant in Hoboken for $17.67 million. Prior to the sale, Defendant, through River Road, executed mortgages on the Maxwell House Plant in favor of several of his creditors, including several law firms that had represented him. On April 21, 1999, Defendant, through River Road, closed on the sale of the Maxwell House Plant.

After payment of closing costs, mortgages, judgments, back taxes, and other liens on the Maxwell House Plant, of the remaining sale proceeds, Dakota received $441,750 and Saska received $1,630,832.99 by separate wire transfers. Additionally, out of the sale proceeds, River Road received $734,679.36, pursuant to the Title Closing Statement.

Subsequently, on April 27, 1999, Joyce Chang received $150,000 via wire transfer from Saska. Also on April 27, 1999, Michael Chang received $120,000 via wire transfer from Saska. On April 27, 1999, and September 1, 1999, Saska made wire transfers of $100,000 and $20,000, respectively, to Elaine Chang. On May 4, 1999, and September 1, 1999, Dakota made wire transfers of $25,000 and $50,000, respectively, to Ms. Cherne. On March 30, 2000, and June 1, 2000, Dakota made wire transfers of $10,000 and $50,000, respectively, to Elaine Chang. No consideration was given for any of these transfers between Saska and Dakota and the Transferee Defendants. With respect to those payments, neither Saska nor Dakota issued federal tax Form

1099 to the respective Transferee Defendants.  Furthermore, the Transferee Defendants did not declare any of these payments on their state or federal income tax returns for the relevant years.

Plaintiffs filed their Complaint on October 7, 2002, seeking to recover from the Transferee Defendants those transfers, and others, pursuant to the above judgments.  The instant motion specifically addressed only the $525,000 aggregate transfers detailed above.

## II.  DISCUSSION

### A.  Standard for a Motion for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.  56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The rule does not increase or decrease a party's ultimate burden of proof on a claim. Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson, 477 U.S. at 255.

Under the Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains. See Celotex, 477 U.S. at 324. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id. at 322 n.3, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S. at 247-48 (stating that "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own

4

affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990)(stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)(stating that "[t]o raise a genuine issue of material fact, . . . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact.").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1. "Where possible, a single joint Rule 56.1 statement is favored." Allyn Z. Lite, New Jersey Federal Practice Rules 192 (2006 ed.)(citations omitted). "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'" Id. at 193 (citations omitted). However, "the parties' statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error." Id. (citation omitted).

    B.  Plaintiffs' Motion for Summary Judgment Is Granted Because There are No Issues as to Material Facts With Respect to the Elements of Plaintiffs' Claims

Plaintiffs seek summary judgment with respect to Counts VI, XII, XVIII, and XXIV of the Complaint, each of which, incorporating the allegation that defendants Saska and Dakota are

alter egos of Defendant, allege fraudulent transfers under N.J. Stat. Ann. § 25:2-27(a) by Defendant to each of the respective Transferee Defendants and seek to reclaim those transfers pursuant to the judgments against Defendant pursuant to N.J. Stat. Ann. § 25:2-29.[1]

    1.    <u>Alter ego status of the corporate defendants</u>

First, Plaintiffs assert a reverse piercing of the corporate veil theory to show that Saska and Dakota were merely alter egos of Defendant and thereby impose liability on those entities for the obligations owed by Defendant. The Third Circuit has never adopted a "rigid test," but instead inquired "into whether the debtor corporation is little more than a legal fiction." <u>Trustees of the Nat'l Elevator Indus. Pension, Health Benefit and Educ. Funds v. Lutyk</u>, 332 F.3d 188, 194 (3d Cir. 2003)(quoting <u>Pearson v. Component Tech. Corp.</u>, 247 F.3d 471, 485 (3d Cir.), <u>cert. denied</u>, 534 U.S. 950 (2001)). The Third Circuit enunciated several factors affecting that consideration: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." <u>Id.</u> (citing <u>American Bell Inc. v. Fed'n of Tel. Workers of Pa.</u>, 736 F.2d 879, 886 (3d Cir. 1984)). Furthermore, the Third Circuit noted "that where the conduct alleged to justify piercing the

---

[1] Plaintiffs did not seek summary judgment for the claims under New Jersey law until their reply brief due to their recognition of the Transferee Defendants' rebuttal of their initial basis for summary judgment under federal law. However, the Court will not strike Plaintiffs' argument under state law in the reply brief because the Transferee Defendants were granted the opportunity to rebut Plaintiff's argument in a sur reply. <u>Contra</u> <u>Bayer AG v. Schein Pharm., Inc.</u>, 129 F. Supp. 2d 705, 716-17 (D.N.J 2001), <u>aff'd</u>, 301 F.3d 1306 (Fed. Cir. 2002)(granting in part a motion to strike portions of the reply brief where it raised arguments not found in the moving brief).

corporate veil is that the corporation as a whole is a 'sham' or 'facade,' a finding 'akin to . . . fraud' is necessary." Id. at 194 n.7 (citation omitted).

Plaintiffs allege that Saska and Dakota have established their alter ego status by their own admission in failing to respond to requests for admissions by Plaintiffs. Federal Rule of Civil Procedure 36(a) provides that any matter in a request for admission is deemed admitted unless denied or objected. The requests for admissions included statements in accordance with the factors listed above, set forth by the Third Circuit for determination of a corporation's alter ego status. (See Declaration of John G. Silbermann at Exhibits 16-17.) With those requests unanswered, by Rule the statements are deemed admitted and the Court thus finds that Saska and Dakota were alter egos of Defendant.

The Transferee Defendants assert that any admissions binding against one defendant under Rule 36 are not binding against them as co-defendants. However, the admissions merely address the status, as a matter of law, of those corporate entities as alter egos of Defendant and, in isolation, do not implicate the Transferee Defendants. Furthermore, as Plaintiffs' reply asserts, several of the Transferee Defendants acknowledge in their depositions that the wire transfers in question were in fact coming from Defendant and therefore they have implicitly admitted that those corporate entities were acting by and through Defendant. (See Declaration of Stuart A. Jackson at Exhibits 3-5.)

Pursuant to the Answer filed jointly by Defendant, Saksa, Dakota, River Road, and another corporate entity, by stating that the money was transferred by Defendant, it is admitted that River Road, Saska, and Dakota were each the alter ego of Defendant. (See Def.'s Answer at ¶ 130.) Furthermore, the Transferee Defendants' Answer previously made the same statement

7

and therefore admitted the same facts. (See Transferee Defs.' Answer at ¶ 131.) Therefore, the Court thus finds that the proceeds of the sale of the Maxwell House Plant distributed by River Road to Saska and Dakota were at all times therein under the exclusive control and possession of Defendant.

      2.    <u>Plaintiffs' fraudulent transfer claims</u>

Plaintiffs must then establish that (1) the transfers were made after Defendant's obligation to the SBA arose, (2) Defendant made the transfers without receiving a reasonably equivalent value in exchange, and (3) Defendant was insolvent at the time of the transfers or became insolvent as a result of the transfers. N.J. Stat. Ann. § 25:2-27(a).

First, is undisputed that the judgments against Defendant arose on December 18, 1998, and June 18, 1999. The 1998 judgment was entered against Defendant in favor of the SBA as Receiver for Taroco Capital Corporation. The 1999 judgment was entered against Defendant and Taroco Enterprises, Inc., in favor of the SBA as Receiver for Southern Orient Capital Corporation.

This matter began with the SBA as plaintiff as Receiver for Taroco Capital Corporation ("Taroco"), but the Receivership was concluded upon entry of the September 13, 2004 Order of this Court that assigned all remaining assets and claims of the Taroco Receivership Estate to the SBA and granted the SBA "standing to succeed the Receiver as Plaintiff" in this matter. (Declaration of John G. Silbermann at Exhibit 2.) Consequently, the SBA succeeded to the judgment entered against Defendant in December 1998 in favor of the SBA as Receiver for Taroco to the SBA. Therefore, Defendant's obligation to the SBA, through assignment, arose in December 1998, before any of the transfers were made.

8

The Transferee Defendants assert, however, that the judgment terminating the receivership is insufficient for purposes of Federal Rule of Civil Procedure 25, which governs substitution of parties. The Rule states that "[i]n the case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c).

The Third Circuit noted with approval the statement of a commentator that "[t]he most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred." Natural Resources Defense Council, Inc. v. Texaco Refining and Marketing, Inc., 2 F.3d 493, 506 (3d Cir. 1993)(quoting 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1958 at 555 (2d ed. 1986)). "Joinder of the transferee is unnecessary unless the trial court makes a discretionary determination that the transferee's presence would facilitate the case." Id. (citation omitted). See also FDIC v. Deglau, 207 F.3d 153, 159 n.2 (3d Cir. 2000)(stating that in the absence of a motion to substitute, the action may properly continue by or against the transferor).

Therefore, the action may proceed with Taroco as party, as named in the Complaint, without need for a motion to substitute the SBA. Additionally, pursuant to the above authority, the Transferee Defendants' assertion that the United States is suing them on new causes of action that did not belong to it in violation of due process is incorrect. The United States, as a plaintiff in the Complaint, has claims under New Jersey law irrespective of the successor Order.

With respect to the second element, although the admissions deemed made by Saska and Dakota state that the transfers were made without receiving consideration in exchange, those

9

statements are contested by the Transferee Defendants' assertion that the payments were made in satisfaction of an antecedent debt owed by Defendant. The evidence, however, contradicts the Transferee Defendants' claims. The Transferee Defendants that are Defendant's children (Joyce Chang, Elaine Chang, and Michael Chang) allege that the transfers were made to satisfy Defendant's obligation to pay for their college expenses. Plaintiffs' note the language of the Separation Agreement incorporated into the Judgment of Divorce for Defendant and his ex-wife. (See Declaration of Stuart A. Jackson at Exhibit 1, ¶ 11.) There, Defendant agreed to be solely responsible for payment of his "children's undergraduate college expenses . . . commensurate with his ability to pay for same." (Id.) As Plaintiffs demonstrate below, due to the conditional nature of the obligation, since Defendant was insolvent at the time of the transfers, he owed no antecedent obligation to his children. Therefore, the transfers were made without receiving reasonably equivalent value in exchange and this element is satisfied with respect to Plaintiffs' claims against those defendants.

      The Transferee Defendants also assert that the transfers to Ms. Cherne were for repayment of loans made by her to Defendant from 1992 through 1999. However, Ms. Cherne's deposition failed to demonstrate any evidence of income sufficient to account for her allegations of loaning over $100,000 to Defendant, nor do the credit card statements and canceled checks submitted in conjunction with the Transferee Defendants' sur reply demonstrate that these transactions were made for or to Defendant and resulted in the creation of a debt on his part. (See Transferee Defs.' Sur Reply at Exhibit A.)

      Furthermore, the Transferee Defendants admit that they failed to respond to Plaintiffs' request for admissions, but allege that they were under no obligation to answer the question of

whether they provided any consideration for the transfers. Yet, the Third Circuit has stated that "Rule 36 admissions are conclusive for purposes of the litigation and are sufficient to support summary judgment." Langer v. Monarch Life Ins. Co., 966 F.2d 786, 803 (3d Cir. 1992)(citation omitted). See also Airco Indus. Gases, Inc. Div. of the BOC Group, Inc. v. Teamsters Health & Welfare Pension Fund, 850 F.2d 1028, 1036 n.9 (3d Cir. 1988)(noting that admissions deliberately drafted to limit and define the facts in issue are traditionally regarded as conclusive for adjudication on summary judgment). "If a party is served with a request for admission of a fact that it now knows to be true, it must admit that fact, even if that admission will gut its case and subject it to summary judgment. That is what Rule 36 was intended to do – narrow the issues for trial, or even altogether obviate the need for trial." Langer, 966 F.2d at 803. Therefore, the Transferee Defendants' refusal to answer the request for admissions is in contravention of that authority and the Court finds that the statements that the transfers were made for no consideration are deemed admitted and cannot now be denied.

  Third, Plaintiffs assert that Defendant was insolvent at the time of the transfers. Plaintiffs refer to the statutory definition of insolvency, stating that "[a] debtor who is generally not paying his debts as they become due is presumed to be insolvent." N.J. Stat. Ann. § 25:2-23(b). Additionally, New Jersey law defines insolvency as occurring where "the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation." N.J. Stat. Ann. § 25:2-23(a). Plaintiffs also note that Defendant has remained silent as to his solvency beyond what was inferred in his deposition testimony in stating that he "float[s] among . . . family members . . . ." (Supplemental Declaration of John Silbermann at Exhibit A.)

  The value of the SBA's aggregate judgments is approximately $3 million. The first

judgment, dated December 18, 1998, is in the amount of $2.1 million. The second judgment, dated June 18, 1999, is in the aggregate amount of approximately $995,000. Therefore, Defendant possessed some, if not all, of this debt at the time of the transfers. Defendant's deposition in June 2000 indicated no available assets at that time, just after the last of the transfers. Therefore, considering Defendant's 2000 deposition testimony and the failure of the Transferee Defendants to present any evidence to the contrary, the Court finds that there is no genuine issue of material fact as to Defendant's insolvency at the time of the transfers. See SEC v. Antar, 120 F. Supp. 2d 431, 443-46 (D.N.J. 2000), aff'd, 44 Fed. App'x 548 (3d Cir. 2002).

Therefore, Plaintiffs have provided evidence demonstrating an absence of genuine issues as to material facts as to each of the elements of N.J. Stat. Ann. § 25:2-27(a) and judgment will be entered against the Transferee Defendants for the value of the transfers in accordance with N.J. Stat. Ann. §§ 25:2-29(a)(1)-(3) and 2-30(b).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted. An appropriate form of order accompanies this Memorandum Opinion.

Dated: March 17, 2006

    s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.